471 So.2d 858 (1985)
Edward Vincent GALLANT, Jr., Plaintiff-Appellant,
v.
TRANSCONTINENTAL DRILLING COMPANY, Larry Alesi, Frank Herring, and Aetna Casualty & Surety Corporation, Defendants-Appellees.
No. 17008-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*859 Hunter & Jack by Frances Baker, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Benjamin C. King, Jr. and Herschel E. Richard, Nelson and Achee by Roland J. Achee and Scott Denhollem, Shreveport, for defendants-appellees.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Judge.
Plaintiff, Edward Vincent Gallant, Jr., brought suit against his employer, Transcontinental Drilling Company, two co-employees, and their alleged liability insurer for injuries sustained in a drilling rig accident that occurred on December 30, 1982, near Homer, Louisiana. Plaintiff alleged that the drilling rig derrick on which he was working was leaning dangerously at the time of the accident, that the defendants were aware of the dangerous condition, that because of the dangerous condition injury was substantially certain to follow, *860 and that defendants thus were guilty of an intentional tort. The defendants' motion for summary judgment was initially overruled, but later was granted on rehearing. Plaintiff appealed the granting of summary judgment; we affirm.
Depositions supporting the motion for summary judgment disclose the following facts. The plaintiff was employed by Transcontinental Drilling Company, and was working on a portable drilling rig owned by the company at the time of injury. The rig was erected in the early part of December 1982. At that time it was discovered that the derrick leaned toward the back. The highest estimate of the amount the derrick leaned was 1½ feet. While few rigs are perfectly plumb when erected, the amount of the leaning in this instance was clearly greater than the amounts ordinarily encountered. However, the tool pusher on the rig decided that drilling could be successfully accomplished despite the leaning, and drilling operations commenced shortly thereafter.
As drilling continued over the next several weeks, some of the workers complained that the leaning of the derrick caused their work to be harder than usual in that certain aspects of the drilling, such as setting the slips, required greater physical exertion. However, there apparently were no complaints or discussions about the safety of the operations in light of the leaning of the derrick. On several occasions during the drilling operations carried out prior to the accident, the travelling block bumped into the A-frame or the bottom girder of the derrick. The travelling block is a 10,000 pound metal device which is raised and lowered via a steel cable each time a stand of pipe is put into or taken out of the hole being drilled. The undisputed testimony of the deposed witnesses was that the bumping could be avoided if the driller exercised care when raising the block.
On the day of the accident, the depth of the hole being drilled was approximately 9,000 feet. The plaintiff was working on the "monkey board"a small platform on the derrick approximately 90 feet above the drilling floor where the other men worked. Plaintiff was working on the morning shift, and the workers, having completed removing all the pipe from the hole in order to change the drill bit, were in the process of putting pipe back into the hole. Six stands of drill collar and two stands of drill pipe had already been put into the hole. The block was being raised to get the third stand of the drill pipe, and had already cleared the A-frame and bottom girder, when the block struck a girder higher up on the derrick. Apparently, this was the first time a girder higher up on the derrick had been struck. At that instant, the steel cable supporting the block snapped, and the block crashed to the drilling floor. The workers below were able to avoid injury, but the broken cable caught plaintiff on his arm as the cable followed the block downward. As a result, the plaintiff sustained severe, permanent injury to his right arm.
As noted above, plaintiff brought suit against defendants contending that defendants had committed an intentional tort. An intentional tort would abrogate the immunity from tort suit ordinarily enjoyed by employers and co-employees for on-the-job accidents. LSA-R.S. 23:1032; Bazley v. Tortorich, 397 So.2d 475 (La.1981). Defendants filed a motion for summary judgment on the grounds that no genuine issue of material fact existed as to whether the plaintiff's injury was intentionally inflicted. Initially, this motion was denied. In denying the motion, the trial judge noted the case of Weinnig v. Brown and Root, Inc., 428 So.2d 1199 (La.App. 5th Cir.1983), as being perhaps the case most directly on point. In that case, the appellate court held that granting a motion for summary judgment was not proper since plaintiffs alleged facts that could arguably constitute an intentional tort. The trial judge in the present case then noted what seemed to be inconsistent statements in the depositions, concluded that doubt existed as to whether there was a genuine issue of material fact with regard to commission of an intentional tort, and denied the motion for summary judgment.
*861 Defendants requested a rehearing which the court granted. On rehearing, the court further examined the question of the propriety of summary judgment, and concluded in light of recent jurisprudence that summary judgment was appropriate. The court took note of the fact that the appellate court's decision in Weinnig, supra, was reversed by the Louisiana Supreme Court, and the trial court's decision granting summary judgment reinstated. See Weinnig v. Brown and Root, Inc., 434 So.2d 1099 (La.1983). The court also noted recent cases which indicate that an injury is not considered as intentional merely because a high probability of occurrence of the injury existed, but is considered intentional where the occurrence of the injury is virtually sure or nearly inevitable. Employing this construction of what constitutes an intentional tort, the trial court granted summary judgment against plaintiff.
Under the provisions of LSA-R.S. 23:1032, a worker is ordinarily limited to recovering workers' compensation benefits rather than tort damages for injuries which are sustained on the job. One exception to this general rule is the instance in which injuries are intentionally inflicted. In Bazley, supra, the Louisiana Supreme Court held that an "intentional act" under LSA-R.S. 23:1032 means the same thing as intentional tort. In so holding, the court noted its belief that the legislative aim was to make use of the well-established division between intentional torts and negligence in the common law. Thus, the court held that the meaning of "intentional" is that the actor either (1) consciously desires the physical result of his act; or (2) knows that that result is substantially certain to follow from his conduct.
In the instant case, no one, including the plaintiff, has expressed a belief that any defendant desired plaintiff to be injured. Therefore, we are only concerned with the second prong of the Bazley testwhether plaintiff's injury was "substantially certain" to result from the leaning of the derrick.
"Substantially certain" is not an alternative to "intentional act" but a method of proving that the act was intentional. Babin v. Edwards, 456 So.2d 659 (La.App. 1st Cir.1984), writ denied 460 So.2d 604 (La.1984). As stated in Bazley:
If the actor knows that the consequences are certain, or substantially certain to result from his act and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. (Emphasis Added)
Examples of this principle are given in W. Prosser, Law of Torts, § 8 (4th Ed.):
An anarchist who throws a bomb into the royal carriage may actually wish to kill no one but the king; but since he knows that the death of others in the carriage is a necessary and almost inevitable incident to that end, and nevertheless goes ahead with that deed, it must be said that he intends to kill them. The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it. (Emphasis Added)
The preceding examples and explanations illustrate how strong the link between defendant's conduct and plaintiff's injury must be before the defendant can be found to have committed an intentional tort under the second prong of the Bazley test. As stated by this court in Reagan v. Olinkraft, 408 So.2d 937 (La.App. 2d Cir.1981), writ denied 412 So.2d 1095 (La.1982): "The language of Bazley ... might be restated as "virtually sure" or "nearly inevitable." Thus, even though a defendant's conduct is negligent, or even grossly negligent, that conduct is not such as will allow the legal imputation of intent. See Maddie v. Plastic Supply and Fabrication, Inc., 434 So.2d 158 (La.App. 5th Cir.1983), writ denied, 435 So.2d 445 (La.1983).
*862 The trial court in the present case correctly decided that no genuine issue of material fact existed as to whether plaintiff's injury was substantially certain to follow from the leaning of the derrick. The depositions of those who worked on the rig with Gallant failed to show that any of the workers felt the leaning of the rig made it substantially certain that the accident, and the resulting injury, would occur. This is born out by the fact that the workers on the drilling floor were aware of the condition of the rig, made no complaints about their safety, and worked for weeks underneath the suspended 10,000 pound weight that eventually fell when the cable holding it snapped. Even Gallant himself agreed at the time of his deposition that the accident had not seemed substantially certain to happen:
Q: But you didn't say that Frank Herring or Larry Alessi desired to hurt you?
A: No, they didn't intentionally mean for me to get hurt, or I hope not.
Q: And you would agreed [sic] that it wasn't substantially certain that you were going to be hurt, otherwise, you wouldn't have gone up in that derrick, would you?
A: Correct.
Further indication that the accident cannot be construed as one substantially certain to happen is the fact that drilling operations had been in progress for weeks before the incident with no accidents or injuries. While the block occasionally had bumped the A-frame or the bottom derrick girder during that time, the particular girder that was struck when the cable snapped apparently had never been hit before, despite the fact that the block had been raised literally hundreds of times prior to the occurrence of the accident. Furthermore, drilling continued without incident for several more days after the accident until the well was completed.
Although the condition of the derrick presented a dangerous situation which, at most, could be said to have made the happening of an accident likely, the circumstances fall far short of indicating that an accident and injury to this plaintiff were substantially certain to occur. It took a combination of the condition of the derrick, the particular manner of operation of the cable and block by the co-workers, the precise place and manner in which the block hit the derrick, and the precise position of the plaintiff at the time for this particular accident and injury to have resulted. The result was hardly predictable much less substantially certain.
A motion for summary judgment is the proper procedural tool to penetrate a plaintiff's general allegations that injuries resulted from an intentional tort. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La. 1984); Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984); Weinnig, supra. Summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact. LSA-C. C.P. Art. 966. Although any doubt is resolved against granting the motion, and in favor of trial on the merits, Ledbetter v. Myers, 438 So.2d 700 (La.App. 2d Cir.1983), we nevertheless find the defendants in this case satisfied their burden of showing convincingly that there exists no genuine issue of material fact, and that they are entitled to summary judgment as a matter of law.
While there may be some inconsistencies as to precise details of the factual circumstances, there is no genuine issue of fact material to a determination of whether the conduct of the defendants was intentional.
In accordance with reasons set forth above, the judgment of the trial court granting the defendant's motion for summary judgment is affirmed. The costs of this appeal are assessed to the plaintiff.
AFFIRMED.