LBROWN, C.J.
Three employees filed petitions for general, special and exemplary damages against their employer, Superior Uniform Group, Inc., and its plant manager. Defendants filed motions for summary judgment claiming that plaintiffs’ exclusive remedy for an occupational disease is in workers’ compensation. The trial court granted the motions. We affirm.

Facts

Plaintiffs, Vonda Williams, Carla Washington, and the now deceased Ruth Boy-ette, were all employed at various times over the last several years at a garment sewing facility operated by Superior Uniform Group Inc., d/b/a Louisiana Uniform Industries, in Delhi, Louisiana. Superior was founded in 1920 ás a family-owned business devoted to the sewing and sale of uniforms and operated several facilities throughout the United States. The Delhi facility received pre-cut fabric which it sewed into uniforms to be worn by employees of retail stores. The plant did not store or utilize toxic chemicals other than those commonly found in most workplaces. The fabrics shipped to the Delhi plant had been treated with chemicals such as formaldehyde, silica and dyes. The sewing process caused fuzz, lint, dust and fumes to fill the air at the plant. Employees were provided with dust masks in the event that any were sensitive or allergic to these contaminants.
Carla Washington is an African-American female, approximately 33 years of age, who began sewing uniforms at Delhi in 1988 and continued to work there until the plant shut down due to economic reasons. Washington | ¡.testified that she was not aware of any hazardous chemicals or toxins at her workplace. Washington was diagnosed with sarcoidosis in February 1999. Sarcoidosis is a disease caused by inflammation and can appear in almost any *246 body organ but most often appears in the lungs or lymph nodes. The cause of this disease is not yet known.
Vonda Williams is an African-American female in her thirties. Williams has a family history of sarcoidosis. Williams also has a history of lumps in her breasts as well as a family history of cancer. Williams was hired at the Delhi facility as a sewing machine operator in June 1992 and worked there for about 13 months. Williams first had lung problems in 1992 and was diagnosed with sarcoidosis in 1993.
Ruth Boyette was a white female in her sixties at the time of her death. Boyette worked at the Delhi facility from 1985 until her death on April 2, 1997. Boyette worked in an office performing secretarial duties, not sewing garments. Boyette was diagnosed with multiple myeloma cancer in 1993, and several weeks later was diagnosed with sarcoidosis. Multiple myeloma is a type of cancer that affects the bone marrow, the body’s blood-forming system.
Vonda Williams, Carla Washington, and the family of the late Ruth Boyette filed their respective lawsuits, which were consolidated for trial, alleging that they should be allowed to recover general, special and exemplary damages from defendants. Plaintiffs alleged that defendants knew the harms that plaintiffs suffered were substantially certain to follow as a result of defendants’ conduct and, more specifically, because of the ^manner in which the Delhi facility was operated and maintained, i.e., with callous disregard for the health and safety of its employees. Defendants have maintained that there is no proof that plaintiffs were exposed to hazardous and toxic substances in the workplace and certainly no evidence that defendants knew it was substantially certain that the environment would cause any harm to plaintiffs.
The trial court granted defendants’ motions for summary judgment finding no proof to implicate the intentional tort exception to the immunity provided in the Workers’ Compensation Act.

Applicable Legal Principles

Intentional tort exception

The Workers’ Compensation Act represents a compromise wherein an employer is responsible for paying limited benefits regardless of fault and the employee loses his right to fully recover in tort. To effectuate its purpose, the Act grants an employer immunity from non-intentional torts. This immunity also applies to third persons, including executive officers. There is one exception to the exclusive nature of the compensation remedy and that is for'intentional acts. The intentional act exception recognizes that one should not escape the consequences of his willful misconduct. La.R.S. 23:1021 et seq.; Stelly v. Overhead Door Co. of Baton Rouge, 94-0569 (La.12/08/94), 646 So.2d 905; Berry v. Insurance Co. of North America, 28,580 (La.App.2d Cir.10/30/96), 683 So.2d 310, writ denied, 97-0091 (La.03/07/97), 689 So.2d 1374.
|/The intentional act exception has been given a narrow interpretation. The term “intent” means that the employer either (1) consciously desired the physical result of his act; or (2) knew that the result was substantially certain to follow from his conduct, meaning that injury is inevitable or virtually sure to occur. Demonstrating intent by the “substantially certain” criterion also requires proof of a strong connexity between the employer’s conduct and the employee’s injuries. Snow v. Lenox International, 27,533 (La.App.2d Cir.11/01/95), 662 So.2d 818. See also, Traweek v. LaBorde, 30,551 (La.App.2d Cir.05/13/98), 713 So.2d 664, writ *247 denied, 98-1933 (La.11/06/98), 727 So.2d 449.

Summary judgment

A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966(B). When a motion for summary judgment has been filed, the adverse party may not rest on the mere allegations of his pleadings, but, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Snow, supra. Appellate review of a grant or denial of summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.02/29/00), 755 So.2d 226.
Generally, a motion for summary judgment is not appropriate for the disposition of cases requiring judicial determination of subjective facts, e.g., motive, intent, good faith, and knowledge. Bailey v. United Gas Pipe Line Co., 27,655 (La.App.2d Cir.12/06/95), 665 So.2d 664, writ denied, 96-0058 (La.02/28/96), 668 So.2d 372. However, considering the exclusive nature of the Workers’ Compensation Act, a motion for summary judgment can be the proper procedural device to penetrate an employee’s general allegations that her injuries resulted from an intentional tort by her employer. Snow, supra. See also, Gallant v. Transcontinental Drilling Co. (La.App. 2d Cir.1985), 471 So.2d 858.

Discussion

It is the position of plaintiffs that defendants knew that their employees, including plaintiffs, suffered and would continue to suffer ill effects from exposure to excessive amounts of fuzz, lint, dust and fumes present at the facility but made no effort to improve the working conditions. Further, plaintiffs assert that defendants knew that there were hazardous and toxic substances at the plant and in the fabric; and, that because of the sewing process these substances would inevitably be released into the air with the fuzz, lint, dust and fumes.
Plaintiffs suggest that as long ■ as an employer engages in “conduct” which is voluntary, then the employer has “intentionally” caused any resulting harm. This interpretation of the law has been specifically rejected by the Louisiana Supreme Court. See Bazley v. Tortorich, 397 So.2d 475 (La.1981).
As stated, plaintiffs could not simply rest on their pleadings but needed to set forth by affidavit or otherwise specific facts in support of their theory. The record, however, presents no facts establishing conduct of any Rtype, intentional or otherwise, that was substantially certain to lead to sarcoidosis, multiple myeloma cancer or any other disease. No employee, prior to this lawsuit, ever complained that the workplace at Delhi caused sarcoidosis or cancer. Except for this action, in 80 years of operation, no employee at any of Superior’s facilities has ever sought disability benefits or filed a workers’ compensation claim alleging that the work environment created any chronic or serious illness. The record further establishes that plaintiffs Williams and Washington are within the population (African-American females between ages 20 and 40 living in the Southeastern region of the United States) with the highest rate of sarcoido-sis; in fact, Williams has a family history of sarcoidosis wholly unrelated to the Delhi workplace. As for Ruth Boyette’s cancer, plaintiffs’ own expert (who never evaluated Boyette or the work environment) attributes the cancer to “radiation” or *248 “benzene exposure;” neither element has ever been found to be present at the Delhi facility.
Plaintiffs suggest that deposition testimony from former employees established there was “lint” and “fuzz;” however none of the employees had any knowledge that the lint or fuzz was hazardous and uniformly testified that they do not believe defendants would have intentionally put them at risk of harm.
The lack of evidence that sarcoidosis or cancer has ever “occurred before” at the Delhi workplace or “manifested itself before” negates the contention that it was “more than a reasonable probability that an injury would occur.” All three plaintiffs testified that they did not rule out other |7causes for their ailments. This together with the medical evidence that sar-coidosis is a disease of unknown etiology and more prevalent among young African-American females in this region also negates a connexity between the work environment and the harm.[1]
Additionally, for the same reasons already stated, plaintiffs have not shown any factual support for their claim that their employer possessed knowledge that the Delhi facility’s working conditions were such that plaintiffs would inevitably contract sarcoidosis or cancer. Plaintiffs have not shown a genuine issue of material fact, that is, that they have any evidence to prove the essential elements of their case.

Conclusion

For the reasons stated herein above, we affirm.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, C.J., STEWART, GASKINS, PEATROSS, and MOORE, JJ.
Rehearing denied.

. Plaintiffs also assigned as error the trial court’s ruling that plaintiffs’ chemist and toxicologist, Dr. Myron A. Mehlman, did not meet the Daubert standard to give a medical opinion. Specifically, the trial court ruled:
Dr. Mehlman attempts to provide an opinion regarding the sarcoidosis and/or cancer causing propensities of certain chemicals and then to not only connect this chemical exposure to the plaintiffs without determining whether the plaintiffs were ever exposed to these chemicals at the Delhi facility, but also to give an opinion as to the origin of these diseases in plaintiffs' bodies without ever having studied the medical implications of these diseases on the human body in general or on these plaintiffs in particular. Therefore, Dr. Mehlman does not appear to be qualified to give this opinion in this case. However, even if Dr. Mehlman was qualified to give this opinion, our courts have held that in order to prove defendants’ intentional conduct, plaintiffs must show more than a reasonable probability, even more than a high probability that they could contract these diseases at the workplace. (Emphasis added).
Without deciding whether Dr. Mehlman met the Daubert standard, we find that his opinion does not show a strong connexity between these diseases and this workplace or that the employer was virtually sure that the employees would contract these diseases.