903 So.2d 600 (2005)
Susan EVANS and Archie Evans, Individually and as Husband and Wife, Plaintiffs-Respondents
v.
BOSSIER PARISH SCHOOL BOARD, Defendant-Applicant.
No. 39,718-CW.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*602 Roland V. McKneely, Jr., Shreveport, for Applicant.
Law Offices of Jack M. Bailey, Jr., by Mary Lou Salley, Shreveport, for Respondents.
Before CARAWAY, PEATROSS and LOLLEY, JJ.
CARAWAY, J.
This suit involves a claim by a school bus driver against her employer for injury received in dealing with a mentally disabled student on the bus. The employer/school board moved for summary judgment, asserting that its actions in dealing with the student and the driver did not make the injury virtually certain to occur so that the driver's remedy is under the Workers' Compensation Act (the "Act"). After the trial court denied the motion for summary judgment, we granted a supervisory writ of review and now reverse and render judgment in favor of the school board.

Facts
Susan Evans ("Evans") is a full-time school bus driver employed by the Bossier Parish School Board (the "Board"). Evans' bus route consisted of picking up special needs children at their homes and transporting them to the central transfer point in Bossier City. She transported between seven and nine physically and mentally disabled children on her bus. One student in particular (hereinafter the "Student"), was characterized as autistic and mentally retarded and had a history of disruptive conduct on the bus.
The accident which gave rise to Evans' injuries was allegedly caused by the Student. The Student was approximately nineteen years old at the time. She was capable of ambulating on and off of the bus. She was described as approximately five feet four inches tall and weighing 110 pounds.
According to John Reser, the Board's transportation director, the first significant incident involving the Student occurred in September 2000, which was shortly after Evans had transferred to this driving assignment from her prior assignment on another route in the parish. In that incident, the Student scratched both Evans and Teresa Baucum, the aide assigned on the bus.
Additionally, Evans generally described the Student's disruptive conduct as involving repeated attempts to get to the front of the bus and to grab the steering wheel and/or push the accelerator. For this reason, whenever the Student was loaded and unloaded on and off the bus, Evans stopped the bus engine and stood up in front of the driver's seat blocking it while the aide seated the Student. The aide would customarily sit next to the Student to maintain control over her. The Student was restrained in a seatbelt but not a harness.
Evans testified that whenever the Student would cause a commotion, she would pull off the road and stop the bus until she and her aide could restore order. Otherwise, the Student's mother would occasionally be called to come and take her off the bus.
Despite these difficulties, Reser testified that Evans chose the Student's bus route in the summer of 2001 when she submitted her annual bid for driving duty for the next school year. During that school year, the Board eventually assigned a second aide to attend to others on the bus, with Baucum's responsibility directed primarily towards the Student.
On the day of plaintiff's accident in April of 2002, the second aide was on the bus *603 and Baucum was in charge of the Student. Evans described the accident as follows:
A. We had picked up our students at transfer. We had gone into Greenacres Subdivision, [the Student] got out of her seat and was laying on the floor, would not get up. I had to pull the bus off to the side of the road. Myself and Teresa Baucum went back to get her into her seat. We tried to talk to her to get her into her seat and she refused to get off of the floor so we tried to pick her up and when we picked her up she started fighting with us. And in trying to hold onto her and keep from dropping her I twisted my back and then we got her into the seat.
Evans finished her route that day and drove her bus route the next morning. After finishing the route, she notified Reser that she had been injured and was referred to Work Kare for treatment, which consisted of medication and physical therapy. When her back pain persisted, her family doctor recommended treatment by an orthopedic surgeon.
As a result of her injury, Evans began receiving workers' compensation benefits but also brought this action against the Board for damages. She claims that in spite of the exclusive remedy provisions of the Act, the Board knew or should have known that she was substantially certain to be injured. She thus claims that her tort claim against the Board falls into the intentional act exclusion provision of the Act, La. R.S. 23:1032(B).
After taking discovery depositions, the Board moved for summary judgment. In its denial of summary judgment, the trial judge, ad hoc, noted:
In this case, the child was repeatedly aggressive and many complaints were filed because of that. Whether or not this rises to the level of an intentional act is a genuine issue of material fact.
The Board sought review of this ruling, and we granted a supervisory writ of review.[1]

Discussion
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). See Deshotel v. Guichard Operating Co., Inc., XXXX-XXXX (La.12/20/04), ___ So.2d ___, 2004 WL 2913965; Williams v. Superior Uniform Group, Inc., 37,176, 37,177 (La.App. 2d Cir.5/22/03), 847 So.2d 244, writ denied, 2003-2023 (La.11/7/03), 857 So.2d 494. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Richard v. Hall, XXXX-XXXX (La.4/23/04), 874 So.2d 131; Williams, supra. Because it is the applicable *604 substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. Deshotel, supra.
When the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all of the essential elements of the adverse party's claim, action or defense, but instead to point out the absence of factual support for one or more elements essential to the claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Strong v. Interkraft Corp., 37,427 (La.App. 2d Cir.6/25/03), 850 So.2d 891, writ denied, 2003-2127 (La.11/7/03), 857 So.2d 502.
If there is circumstantial evidence from which one could reasonably infer that the act was intentional, weighing of factual evidence regarding the alleged intentional act is inappropriate on a motion for summary judgment. Lyons v. Airdyne Lafayette, Inc., 563 So.2d 260 (La.1990). Nevertheless, a motion for summary judgment is the proper procedural tool to penetrate a plaintiff's allegations that injuries resulted from an intentional tort. Gallant v. Transcontinental Drilling Co., 471 So.2d 858 (La.App. 2d Cir.1985).
Employers and their employees are not liable in tort for an employee's injuries which occur within the scope and during the course of the employee's duties, and the employee's exclusive remedy for workplace injuries is in workers' compensation. La. R.S. 23:1032(A); Strong, supra. Under the Act, an employee's exclusive remedy against his employer and any co-workers for personal injuries sustained during the course and scope of employment is ordinarily limited to recovering workers' compensation benefits rather than tort damages. However, this immunity from tort actions does not apply when the employee's injuries are as the result of an intentional act. La. R.S. 23:1032(B); Jones v. Thomas, 426 So.2d 609 (La.1983); Caudle v. Betts, 512 So.2d 389 (La.1987); Charkhian v. Nat'l Environmental Testing, Inc., 907 F.Supp. 961 (D.La.1995). In such instances, the Act does nothing to affect or shield the liability of an employer or a co-employee.
In Bazley v. Tortorich, 397 So.2d 475 (La.1981), the Louisiana Supreme Court stated that an act is considered intentional whenever it is shown that the defendant either "consciously desired" the physical results of his conduct or was "substantially certain" that those physical results would follow from his actions. Charkhian, supra; see Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984); Traweek v. LaBorde, 30,551 (La.App. 2d Cir.5/13/98), 713 So.2d 664; writ denied, 98-1933 (La.11/6/98), 727 So.2d 449; Rankins v. Aytch, 591 So.2d 387 (La.App. 2d Cir.1991); see also Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759 (5th Cir.1984). To satisfy the criterion of "substantial certainty," which is a critical element in proving an intentional tort, it is necessary to show more than a reasonable probability that an injury will occur. The term has been interpreted as being equivalent to "inevitable," "virtually sure" and "incapable of failing." Charkhian, supra.
A review of Evans' claim reveals that she does not single out an employee or administrator of the Board and assert that the intentional act in this case resulted from the conscious desire of that person *605 to commit an intentional tort upon her. There is no clear claim for vicarious liability against the Board for one employee's independent and intentional act to deliberately harm Evans or the other aides on her bus contrary to the Board's corporate will. Therefore, Evans is unlike the injured employee who is harmed by an intentional battery of a co-worker, as in Jones, supra, or by on the job horseplay, as in Caudle, supra.
Instead, Evans asserts that the Board's collective will, shown by the decisions of its multiple "agents," intentionally required Evans to continue with her duties in relation to the Student and the other children, with substantial certainty of harm being understood by all those agents. The decisions regarding the number of students on the bus, the procedures for handling a disruptive child, the hiring of a second aide and the training of Evans and the aides were made by multiple employees and administrators of the Board. Those decisions, as shown by the evidence, do not reasonably imply a collective intentional act so as to expose Evans to the substantial certainty of harm. Just as this court stated in Rankins, supra at 390, affirming a school board's summary judgment involving a very similar claim by a bus driver:
To conclude that these employees could have predicted with any degree of certainty the actions of a disturbed child described as unpredictable would be manifestly unreasonable.
Moreover, from Evans' description of the incident in question by which she twisted her back, her decision to pick the child up, instead of taking less strenuous physical action or calling the child's parent, demonstrates that her own negligence arguably contributed to her injury. Thus, the substantial risk of harm allegedly intended to befall her cannot be reasonably inferred considering both her ability and other procedures in place to avoid that harm.
The difficulty measuring negligent actions and decisions on the job by the employer, a co-worker and/or the injured employee is what the no fault principle of the Act is intended to alleviate, and Evans is receiving the Act's relief. Thus, we find that the possibility of any deficient actions and decisions by persons in this case, including plaintiff, places this case squarely within the Act and does not exclude it under Section 1032(B) because of intentional tortious conduct.

Conclusion
The ruling of the trial court is reversed and judgment is hereby granted in favor of the Board dismissing plaintiffs' claims. Costs of appeal are assessed to the plaintiffs.
RULING OF TRIAL COURT REVERSED, SUMMARY JUDGMENT GRANTED.
NOTES
[1] Appellants again object in their appellate brief to the timeliness of supervisory review of this matter. The hearing on defendant's motion for summary judgment occurred on September 23, 2004, and the trial court took the matter under advisement. The trial court's written reasons for denying defendant's motion were dated September 29, 2004. A written judgment denying the motion was signed on November 10, 2004. Plaintiffs then objected to this court that defendant's December 1, 2004 writ application was untimely. By grant of the writ of supervisory review, a prior panel of this Court concluded otherwise and further review of the issuance of the writ will not be given.