# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-305

**JOHNNY WIMBLEY & MARIE WIMBLEY**

**VERSUS**

**MCLINEY CENTERS, L.L.C., D/B/A**

**SUTHERLANDS HOME BASE, ET AL.**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 266,329
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

**REVERSED AND REMANDED.**

**Brian M. Caubarreaux**
**Emily Gremillion**
**Brian Caubarreaux & Associates**
**Post Office Box 129**
**Marksville, LA   71351**
**(318) 253-0900**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
      **Johnny Wimbley**
      **Marie Wimbley**

**Brian T. Butler**
**C. Reynolds LeBlanc**
**Keogh, Cox & Wilson, Ltd.**
**Post Office Box 1151**
**Baton Rouge, LA   70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
      **McLiney Centers, L.L.C. d/b/a Sutherlands Home Base**
      **Edward Acevedo**
      **Travelers Property Casualty Company of America**
      **The Travelers Indemnity Company**

**PERRET, Judge.**

In this personal injury suit, Johnny and Marie Wimbley (collectively, "Plaintiffs") seek review of the trial court's granting of summary judgments in favor of defendants, McLiney Centers, LLC, d/b/a/ Sutherlands Home Base ("Sutherlands HomeBase"), Edward Acevedo, Travelers Property Casualty Company of America, and The Travelers Indemnity Company (collectively, "the Defendants"). For the following reasons, we reverse upon finding that there are genuine issues of material fact as to whether Plaintiffs' tort claims fall under the intentional act exclusion of the Workers' Compensation Act.

**FACTS AND PROCEDURAL HISTORY:**

On April 23, 2019, Johnny Wimbley ("Mr. Wimbley"), an employee of Sutherlands HomeBase, was injured while in the course and scope of his employment at the Sutherlands HomeBase facility in Alexandria, Louisiana. On the date of the accident, Edward Acevedo ("Mr. Acevedo"), the assistant manager of lawn and garden at Sutherlands HomeBase, was using a forklift, also known as a "lift truck," to put a tiller on the top of a shelf inside the receiving area of the facility. According to Mr. Acevedo's deposition, the top shelf was approximately eight to ten feet off the ground and, as he tried to use the forklift to move the tiller to the back of the shelf, the tiller tilted and leaned against the wall behind the shelf. Mr. Acevedo testified that he then tried using the forklift to level the tiller on the shelf but was unable to do so.

Thereafter, Mr. Acevedo had Mr. Wimbley climb onto the forks of the forklift and raised him to the top shelf where the tiller was located. Once lifted to the top shelf, Mr. Wimbley fell and sustained injuries. Specifically, Mr. Wimbley's petition states that he "was directed by his manager, [Mr. Acevedo], to work and/or ride on

a platform being lifted to move equipment without safety equipment, when [h]e fell off of the platform into a shelving unit."

On September 26, 2019, Plaintiffs filed suit against Mr. Acevedo and Sutherlands HomeBase, wherein they alleged that the accident was caused by the fault of the Defendants in the following ways:

a.     Ordering JOHNNY WIMBLEY to work and/or ride a platform without heeding proper safety equipment;

b.     Failing to provide and/or post proper safety instructions on the equipment for the task being completed;

c.     Failure to safely operate the subject equipment;

d.     Intentionally placing JOHNNY WIMBLEY and other employees in a perilous and dangerous position;

e.     Requiring its employees to work and/or ride the platform and continue working atop the platform without heeding proper safety procedures;

f.     Failing to train and supervise its employees as to proper safety equipment, precautions and procedures;

g.     Failing to provide and/or require proper safety equipment to be used by its employees;

h.     Failing to require adherence to proper safety procedures by its employees; and

i.     Failing to train its employees and perform adequate safety meetings.

Plaintiffs alleged that the Defendants "knew that they did not provide the proper equipment and/or follow proper safety procedures to be used in connection with the work being performed by JOHNNY WIMBLEY and intentionally failed to correct known hazardous conditions which would cause great bodily harm[;]" that they "were substantially certain that their actions and/or inactions would result in severe personal injury or death and that their actions and/or inactions were extreme,

2

outrageous and ultrahazardous, resulting in the injuries of JOHNNY WIMBLEY[;]" and that "the injuries to JOHNNY WIMBLEY were caused by an intentional tort as contemplated by Louisiana Law." On April 5, 2021, the petition was amended to include, as defendants, Travelers Property Casualty Company of America and The Travelers Indemnity Company.

On August 18, 2022, Sutherlands HomeBase filed a motion for summary judgment on the issue of the intentional act exception, arguing that "Louisiana law provides that under these facts, plaintiff's exclusive remedy against Sutherlands is in workers' compensation." Sutherlands HomeBase argued that Plaintiffs cannot meet their high burden to produce evidence to show an intentional act exception to the Workers' Compensation Act, which requires the employer to consciously desire to harm the employee or that it was certain and inevitable that the accident was going to occur. In support of its motion, Sutherlands HomeBase attached: (1) the Plaintiffs' petition for damages; (2) the deposition of Mr. Acevedo; (3) the deposition of Juan Cruz, Sutherlands HomeBase's store manager; (4) the deposition of Mr. Wimbley; (5) the affidavit of Juan Cruz; (6) the deposition of Elizabeth Wilson ("Ms. Wilson"), an employee of Sutherlands HomeBase's store; (7) the deposition of Greg Armstead ("Mr. Armstead"), the assistant manager of Sutherlands HomeBase's store; and (8) the deposition of Frank Piper ("Mr. Piper"), an employee of Sutherlands HomeBase's store.

On September 20, 2022, the Plaintiffs filed a motion for spoliation of evidence and requested for the trial court to grant their order "for spoliation of video evidence thereby casting the defendants with an adverse presumption[.]" In their motion, Plaintiffs allege that "Former Sutherland's employee, Elizabeth Wilson, has provided a detailed description of video surveillance capturing the [April 23, 2019]

3

incident from which this suit arises[;]" that "employees of Sutherland's have testified that they are not aware of any video surveillance of the subject incident[,]" that "[o]pposing counsel asserts that the video was not saved due to the default settings of the store's video surveillance system" and that the "actions taken by defendants on [April 23, 2019] prove they knew litigation was imminent as a result of the incident." Thus, the Plaintiffs prayed "for an adverse presumption against the defendants . . . thereby establishing that defendant-manager, Edward Acevedo, instructed the plaintiff to ride the forks of the forklift approximately ten (10) feet without a safety harness and re-arrange merchandise." In support of their motion for spoliation, Plaintiffs attached the January 19, 2022 deposition of an employee of Sutherlands HomeBase, Ms. Wilson, who testified that on April 23, 2019, around 5:00 p.m., she watched a video of Mr. Wimbley's fall while standing in the store's camera room along with Mr. Armstead and Mr. Piper.

Plaintiffs also filed an opposition to the Sutherlands HomeBase's motion for summary judgment on September 20, 2022, arguing that there are genuine issues of material fact as to whether the Defendants "knew to a substantial certainty that injury would occur to Mr. Wimbley from their actions and inactions." Plaintiffs assert that "Defendant-manager, Edward Acevedo, intentionally chose to hoist Mr. Wimbley approximately 10 feet in the air on the fork(s) of a forklift, without a harness, to re-arrange a tiller on a merchandise shelf despite his actual knowledge that injury is substantially certain to happen under those circumstances." In support of their opposition, the Plaintiffs attached: (1) the deposition of Mr. Wimbley; (2) the deposition of Mr. Acevedo; (3) the deposition of David Bryant ("Mr. Bryant"); (4) the deposition of Mr. Armstead; (5) the deposition of Ms. Wilson; and (6) the deposition of Mr. Piper.

After a hearing on November 7, 2022, the trial court granted Sutherlands HomeBase's motion for summary judgment stating, as follows:

> Okay, I've read the Memos, and I've read the case law. And based upon the case law, although I feel it was, I guess per se, foolish what was done, but it does not arise to the act of intentional negligence. And it has to be intentional negligence for an employee to be responsible for negligence, as opposed to being responsible for just Workers Comp. So the Court grants the Motion.

After granting the motion for summary judgment, the trial court ordered Plaintiffs' motion for spoliation moot.

Following this ruling, on December 13, 2022, defendants, Mr. Acevedo, Travelers Property Casualty Company of America, and The Travelers Indemnity Company, also filed a motion for summary judgment, wherein they make the same arguments as previously made in Sutherlands HomeBase's motion for summary judgment. On January 18, 2023, the Plaintiffs filed an opposition to the remaining defendants' motion for summary judgment, alleging the same arguments that were made in their earlier opposition to the Sutherlands HomeBase's motion for summary judgment.

After a hearing on February 6, 2023, the trial court also entered summary judgment in favor of Mr. Acevedo, Travelers Property Casualty Company of America, and Travelers Indemnity Company, stating, as follows:

> Okay. I've read the cases and reviewed all the cases. Again, I did previously when they came for the first Motion for Summary Judgment.
>
> And I know Mr. Wimbley and his wife. I'm familiar with them. I mean we went to school together. So I, I read the cases in thorough detail, trying to make sure I'm making the right decision. Because I feel like what happened to him was just a disaster. I feel -- I feel so bad about what happened to him. But when I read the case law, it keeps saying, 'Gross negligence['] is not an intentional tort. Violation of OSHA Laws is not an intentional tort. Violation of Safety Rules is not an intentional tort. And I -- it has to be intentional.

5

And I'm just -- the case -- I hate this is the case law, but I just can't go[] against the case law. When I read the case law, that's what it says, and it's just -- I can't see where it was an intentional tort. It was definitely bad judgment, most definitely. It was foolish what they did, when you could use one instrument with safety measurements on it, and get -- put him up on a forklift.

But yet, the forklift is really not what caused the injury, even though it's foolish for them to even suggest that he get up on it and go ten feet (10 ft) high. It's when he stepped on the shelf. The shelf gave way is what caused, you know, broke and made him fall. He didn't actually fall from the forklift. From everything I read, he fell when he stepped on the shelf, and the shelf gave way.

## RULING OF THE COURT

But nevertheless, this was foolish what they did. But I just can't find that it meets the law, it meet the standard of intentional tort. So that Workers' Comp would be eliminated.

On February 15, 2023, the trial court issued two separate judgments dismissing all of the Plaintiffs' claims against the Defendants.[1] The Plaintiffs now appeal these judgments, alleging the following four assignments of error:

1. The Trial Court erred in granting the defendant[s'] Motions for [S]ummary [J]udgment by determining the defendants did not act with "intentional negligence."

2. The Trial Court erred in granting the defendant[s'] Motions for Summary Judgment in light of defendants' intentional choice to place the plaintiff in a known, injury-causing, predicament.

3. The Trial Court erred in granting the defendant[s'] Motions for Summary Judgment because there is no genuine issue of material fact that the defendants knew or should have known that injury would occur as a result of lifting the plaintiff ten (10) feet without a safety harness based [on] defendant-manager's knowledge and experience.

4. The Trial Court erred in granting the defendant[s'] Motions for [S]ummary [J]udgment in light of the conflicting testimony regarding whether the plaintiff volunteered or was instructed to perform the task at issue.

---

[1] The first judgment, signed on February 15, 2023, was only in favor of defendant, Sutherlands HomeBase. However, on that same date, the trial court issued an additional judgment dismissing all of the Plaintiffs' claims against the additional defendants, Mr. Acevedo, Travelers Property Casualty Company of America, and The Travelers Indemnity Company.

**STANDARD OF REVIEW:**

"Appellate courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 3 (La. 11/29/06), 950 So.2d 544, 547. Under this standard of review, this court must determine whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.* "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* (alteration in original) (quoting *S. La. Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writs denied*, 596 So.2d 211 (La.1992)).

The burden of proof on a motion for summary judgment rests with the mover: here, the Defendants. La.Code Civ.P. art. 966(D)(1). In this matter, the Defendants will not bear the burden of proof at trial; the burden of proof rests with the Plaintiffs. Thus, once the Defendants properly support their motion for summary judgment, then under La.Code Civ.P. art. 966(D)(1), they need only point out to the trial court the absence of factual support for one or more elements essential for the Plaintiffs to establish an intentional act exception to the Workers' Compensation Act.

Thereafter, the burden shifts to the Plaintiffs "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the [Defendants are] not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1). The Plaintiffs "may not rest on the mere allegations or denials of [their] pleading, but [their] response . . . must set forth specific facts showing that there is

7

a genuine issue for trial. If [they] [do] not so respond, summary judgment, if appropriate, shall be rendered against [them]." La.Code Civ.P. art. 967(B).

## DISCUSSION:

Under the Louisiana Workers' Compensation Act, an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of his employment. La.R.S. 23:1031. The rights and remedies of an employee and an employer's liability are set forth in La.R.S. 23:1032, which provides in pertinent part:

> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages . . . .
>
> . . . .
>
> B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

In *Bazley v. Tortorich*, 397 So.2d 475, 481–82 (La.1981), the Louisiana Supreme Court addressed the "intentional act" exception and stated, in pertinent part (internal citations omitted) (emphasis added):

> The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.
>
> . . . .
>
> [W]e construe the legislation [La.R.S. 23:1032] under review as providing that the exclusive remedy rule shall be inapplicable to intentional torts or offenses. The meaning of intent in this context is that the defendant either desired to bring about the physical results of

8

his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. **Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.**

An explanation of what constitutes an intentional act causing an intentional injury was also expressed in W. Prosser, *Law of Torts*, § 8 (4th ed. 1971), stating, in pertinent part:

> The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it.

In this case, we find the trial court's reasons for granting the motions for summary judgment focused on whether the Defendants consciously desired to bring about Mr. Wimbley's injuries, and it is unclear whether the trial court considered the second prong of the *Bazley* test, i.e., whether the Defendants knew, or should have known, that Mr. Wimbley's injuries were substantially certain to follow from Mr. Acevedo's actions on April 23, 2019. Plaintiffs do not allege that the Defendants consciously wanted to cause harm to Mr. Wimbley; rather, they assert that Mr. Wimbley's injuries were substantially certain to follow from Mr. Acededo's conduct.

In the opposition to summary judgment, the Plaintiffs alleged the following undisputed material facts (footnotes omitted):

> 1. Defendant-manager, Edward Acevedo, chose to lift the plaintiff while standing on the forks of the forklift to the top shelf in the store's receiving area.

2. An "order picker" is the proper equipment to use under the circumstances.

3. An order picker was available at the store at the time of the incident and approximately 15 feet away from the area of the subject incident.

4. Defendant, Edward Acevedo, chose not to use the order picker despite its availability.

5. Multiple employees testified that it is well-known that an individual is forbidden to ride on the forks of a forklift because it is forbidden by OSHA standards as well as Sutherland's policies and procedures.

6. Defendant-manager, Acevedo, was aware of Sutherland's policy and procedures requiring that all employees use a harness at heights more than 4 feet.

7. Plaintiff fell from approximately 8 to 10 feet high.

8. Plaintiff was not provided a harness or any other fall arrest system.

9. Plaintiff sustained severe injuries necessitating knee replacement, cervical steroid injections, left finger surgery, and psychological injury.

In support of their opposition, Plaintiffs cite to the November 3, 2020 deposition of Mr. Wimbley's manager, Mr. Acevedo, to argue that there are genuine issues of fact as to whether Mr. Acevedo's actions of lifting Mr. Wimbley above eight feet, without safety equipment, would inevitably cause severe bodily injury. Specifically, Mr. Acevedo testified in his deposition as follows:

Q.    So why didn't you get the order picker?

A.    I guess against my judgment, Johnny was on the fork telling me, "Come on. Raise me. Raise me. Raise me. We'll get it done quicker."

      . . . .

Q.    You were operating and could have refused to raise the forklift; correct?

A.    Correct.

      . . . .

10

Q.   So what are the reasons for using an order picker over a reach truck [aka forklift]?

A.   Safety.

Q.   And when you say "safety," what do you mean?

A.   You have to be harnessed into the [order picker], harnessed into the order picker.

Q.   And what is the reason for harnessing?

A.   So you don't fall and hurt yourself.

Q.   And does the reach truck [forklift] have a harness?

A.   No, sir.

Q.   Does the reach truck [forklift] have a safety clip?

A.   No, sir.

Q.   Does the reach truck [forklift] have any safety features when you're standing on the forks?

A.   No, sir.

Q.   There's no rails?

A.   Just two forks.

Q.   You testified that if you're higher than 4 feet - - if an employee is higher than 4 feet, they're required to be harnessed?

A.   Yes, sir.

Q.   Was Mr. Wimbley higher than 4 feet?

A.   Yes, sir.

Q.   Did you know the 4-foot rule at the time of the accident?

A.   Yes, sir.

Q.   And you ignored that rule at the time of the accident?

A.   Against my judgment, yes, sir.

.  .  .  .

11

Q.	If somebody falls from 10 feet, you would expect them to get hurt?

	. . . .

A.	In some form, they will get hurt.  Maybe a sore muscle, maybe a sprain.

Mr. Acevedo also testified that an "order picker" was available at the store at the time of the incident and was located between fifteen and twenty feet away from the area of the subject incident.

Plaintiffs also cite to the deposition testimony of Mr. Bryant, Sutherlands HomeBase's employee and a licensed forklift operator, to create a genuine issue of fact as to whether Mr. Wimbley's injuries were substantially certain to follow from Mr. Acevedo's actions of having Mr. Wimbley raised on a forklift, approximately ten feet in the air, without a safety harness.  Specifically, Mr. Bryant testified as follows:

Q.	All right.  Now in the safety program, you're familiar with that?

A.	Yes, sir.

Q.	Does it tell you not to put people on the forks of a forklift and put them in the air?

A.	Yes, sir.

Q.	And you knew that as a forklift operator?

A.	Yes, sir.

Q.	Have you ever done that?

A.	No, sir.

	. . . .

Q.	If you had to get on a lift to raise yourself or someone else in the air, what kind of equipment would you use?

A.	We got a lift on the side of the store, it's called an order picker, you know, it self operates.

Q. So, it's an order picker?

A. Yes, sir.

Q. And it's got a D-ring to tie off on with a harness?

A. Yeah. You put a safety harness on there, you got a pallet, you know. If you need to put materials on it, it's got a pallet right behind it where you can just put your materials on it and stuff, whatever you need.

Q. Okay. But to use that before you go up, is it the policy and procedure of Sutherland's to have a harness on?

A. Yes, sir. Before you even turn the key to crank it up.

. . . .

Q. Is that on every piece of equipment where a human is being lifted off the ground?

A. Yes, sir.

Q. And to do that would be a direct violation of the safety procedures at Sutherland's?

A. Yes, sir.

Q. Do you think all the managers at Sutherland's know that?

A. Yes, sir.

. . . .

Q. In that time period where Mr. Wimbley got hurt and right before that, were there safety meetings such as that?

A. Yes, sir. We had safety meetings.

Q. Okay. You said they discussed the forklift. Did they discuss don't pick people up on forklifts?

A. Yes, sir. Yes, sir.

Q. And it was a mandatory meeting?

A. Mandatory, yes, sir.

Q. Did they say why? Because people could fall?

A.   Yeah. Hurt themselves or, you know, somebody could get killed or anything like that.

Q.   So don't raise people up on that?

A.   That's not allowed.

Plaintiffs also relied upon the deposition testimony of Mr. Armstead, an assistant manager for seventeen years at Sutherlands HomeBase, who testified that he would not put an employee on a forklift and raise him off the ground. Specifically, Mr. Armstead testified, in pertinent part:

Q.   As a supervisor would you, sir, ever put a co-employee on the forks of a forklift and raise them off the ground?

A.   No, sir.

Q.   And why would you not do that?

A.   Because that's what it says in the manual and that's not safe.

Q.   What are the consequences of doing that for an employee, or any other person for that matter?

A.   Well, if you do it, you'll get fired and an employee will probably get hurt.

We find Plaintiffs produced sufficient evidence to create genuine issues of material fact regarding whether the Defendants knew, or should have known, that Mr. Wimbley's injuries were "substantially certain" to occur due to the actions of Mr. Wimbley's manager, Mr. Acevedo's, on April 23, 2019. "If there is circumstantial evidence from which one could reasonably infer that the act was intentional, weighing of factual evidence regarding the alleged intentional act is inappropriate on a motion for summary judgment." *Evans v. Bossier Par. Sch. Bd.,* 39,718, p. 5 (La.App. 2 Cir. 5/11/05), 903 So.2d 600, 604 (citing *Lyons v. Airdyne Lafayette, Inc.*, 563 So.2d 260 (La.1990)). *See Williams v. Ingredient Tech. Corp.*, 470 So.2d 283 (La.App. 5 Cir. 1985) (wherein the court reversed summary judgment

for the defendants due to issues of fact regarding whether the supervisor employee must have believed and known that injury was substantially certain to result from his actions and instructions); and *McDonald v. Gonzales*, 479 So.2d 9 (La.App. 5 Cir. 1985) (wherein the court reversed summary judgment due to issues of fact regarding whether foreman who ordered painter to continue working after his complaints of dizziness was substantially certain that the result would follow).

Because we find genuine issues of material fact exist in this matter, we hereby reverse the trial court's judgments granting summary judgment. As such, we remand this matter to the trial court for it to address Plaintiffs' September 20, 2022 motion for spoliation, which was rendered moot by the granting of summary judgments, and for the court to hold a trial on the merits of the case. Costs of this appeal are assessed to the Defendants.

**REVERSED AND REMANDED.**